IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IPLEARN, LLC,

    Plaintiff,

v.

BLACKBOARD INC.,

    Defendant.

C.A. No. 11-876 (RGA)

## MEMORANDUM ORDER

Before the Court is Defendant's *Daubert* Motion to Exclude Portions of the Expert Testimony of Dr. Nicholas Bambos. (D.I. 171). It is fully briefed. (D.I. 172, 221, 239). For the reasons stated below, it will be **DENIED**.

This motion is a *Daubert* motion. Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Court of Appeals has explained:

Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his on her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must

1

> assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."
>
> By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003).[1]

Defendant's Motion seeks to exclude portions of Dr. Bambos' expert testimony because "his methods and opinions are too unreliable to be presented to a jury." (D.I. 172 at p.2). Defendant argues that Dr. Bambos lacks familiarity with the infringing products, relied too heavily on someone else to provide him with relevant segments of source code to review, and used the Court's claim construction to determine how the products work. (D.I. 172 at p.2).

Defendant does not challenge Dr. Bambos' qualifications. (D.I. 239 at p.1 n.1).

Dr. Bambos never used the allegedly infringing products, but his expert opinion was based on "thousands of pages of technical manuals, source code, and depositions transcripts." (D.I. 221 at p.1) (*See* D.I. 221-4 at 3-6; D.I. 221-3 at 2-5). Rule 702 requires that expert testimony be based on "sufficient facts or data." Dr. Bambos need not use the product if, as here, he has familiarized himself with it in other ways. Reviewing source code and other materials can be sufficient. Whether Dr. Bambos should have based his expert opinion on personal use with the product, rather than source code and other materials, is fodder for cross-examination, not a *Daubert* issue for this Court.

---

[1] The Court of Appeals wrote under an earlier version of Rule 702, but the recent amendments to it were not intended to make any substantive changes.

2

Defendant contends that, because Dr. Bambos relied too heavily on his written report during the deposition, he is unfamiliar with the products and too unreliable to appear before a jury. (D.I. 172 at pp.5-6). Defendant states that Dr. Bambos spent over 25 minutes reading the report to find the answer to a particular question about the infringing products, continuing reading into his lunch break. (D.I. 172 at p.5). The deposition record, however, reveals a more complicated exchange, where the witness was repeatedly told by both lawyers that he could take his time, even though he spent considerable time reviewing the report while answering questions. (*See* D.I. 174 at 115-25). Defendant also points out other examples of relying on the report to answer questions about the product. (D.I. 172 at pp.5-6). In other words, Defendant says Dr. Bambos will be a poor witness, at least unless he is better prepared for trial than he was for deposition. Whether Dr. Bambos relied too heavily on his report in his deposition does not, in my opinion, raise a *Daubert* issue.

Defendant argues that because Dr. Bambos reviewed selected pieces of source code provided by someone else, rather than the complete source code of the products by himself, his testimony should be excluded. (D.I. 172 at pp.6-7). Even if Dr. Bambos did not know the qualifications of the individual who selected the pieces of source code, or whether there might be other relevant segments of the source code, he was able to determine whether the sections of code related to the elements relevant to infringement. (D.I. 221 at p.6) (*See* D.I. 221-4 at 12-13). Therefore, his expert opinion is based on sufficient facts and reliable methods. Whether Dr. Bambos should have consulted the complete source code, and might have missed something that

3

would change his opinion, is an issue for cross-examination and, possibly, contradictory expert testimony by Defendant's expert.[2] Ultimately, the jury will decide Dr. Bambos' credibility.

Defendant argues that Dr. Bambos "[p]uts the [c]art before the [h]orse" because he used this Court's claim construction order to inform how the products work. (D.I. 172 at p.7-9). "He does not understand that the way a product works has nothing to do with the way the claim is construed – rather, one determines how a product works by examining *the product*." (D.I. 172 at p.8) (emphasis in original). Plaintiff responds that Dr. Bambos' testimony is based on "considerable evidence" of how the products work, as well as how Dr. Bambos has applied facts about the products to this Court's claim constructions. (D.I. 221 at p.11). It is not self-evident from the deposition transcript cited by Defendant (D.I. 172 at p.8) that Dr. Bambos' reference to the Court's claim construction was an explanation of how the products work, rather than an application of the construed claims onto the product. (*See* D.I. 174 at 108-12). Defendant also contends that Dr. Bambos ignored the actual claim language and contradicted his written report with his claim interpretations. (D.I. 172 at pp.9-10). As the infringement expert, Dr. Bambos' role is to compare the construed claims to the allegedly infringing products. Defendant has not shown that he has not done that. To the extent his written report and deposition testimony are inconsistent with each other, or are inconsistent with his trial testimony, that is a subject for cross-examination at trial. The snippet about ignoring claim language is also not persuasive. Of

---

[2] Defendant cites an earlier decision of mine in *MOSAID Techs. Inc. v. LSI Corp.*, 2014 WL 807877, at *3 (D. Del. Feb. 28, 2014), but I think the better precedent is *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, 2014 WL 266303, at *4-5 (D. Del. Jan. 24, 2014), where I determined that it was sufficient for an expert to analyze a single version of source code and confirm that in subsequent revisions that the relevant functionality had not changed. That is, the expert analyzed what he thought he needed to analyze.

4

course, at trial, Dr. Bambos will have to apply the language of the claims, including any construction of the Court.

In sum, for the above reasons, Defendant's motion is **DENIED**.

Entered this 29th day of September, 2014.

                                                                 United States District Judge